*942 OPINION.
Trussell:
In the return filed by the petitioner for the taxable year deductions were claimed for net losses forwarded from 1923 and 1924. The deduction for the net loss for 1924 has been allowed by the respondent, and is not in dispute. The net loss for 1923 was deducted in the return for 1925 as $76,966.59. The respondent has reduced this to $16,927.59, which is the amount of net loss for 1923 which was reported in the return filed by the petitioner for 1923. The discrepancy in the returns in this regard is attributable to the cost of two leases, No. 118, $20,007, and No. 119, $40,032, which cost was originally claimed by the petitioner as a deduction in the return filed for 1922. The amounts of the cost are not in controversy. It is undisputed that net losses for 1923 and 1924 are properly to be forwarded and deducted in the taxable year. See section 206 (e) and section 286 of the Revenue Act of 1926. The petitioner has abandoned the issue. relative to lease No. 118. We are required to decide in which year the loss of the cost of lease No. 119 should be allowed as a deduction from income.
We are satisfied that lease No. 119 could not have been deemed altogether worthless in May, 1922, when the petitioner saw fit to pay another annual installment of the “ delay ” money, a rental charge under the provisions of the lease, securing the privilege of a deferment of drilling for 12 months. There can be no question but that in April or May, 1923, when the lease expired, without a well having been started, the cost was definitely gone. There is no evidence to show that during the interim the petitioner surrendered its leasehold or declared forfeiture or abandonment, and since there *943 was no drilling or other development under way there is no act of physical abandonment which may be availed of to evidence an intention to abandon the lease as in Belridge Oil Co., 11 B. T. A. 127; and A. H. Fell, 7 B. T. A. 263. If there were no further considerations the deduction of the lease would be allowable as definitely sustained when the lease expired in 1923.
But there are further considerations. The cost of the lease was charged off on the books at the end of 1922, and, therefore, prior to its expiration, and the journal entry classified the lease with others described as “ bad and expired.” If it was in fact worthless and abandoned, the loss should be allowable as a deduction in 1922, even though the lease had not yet expired. A. L. Huey, 4 B. T. A. 370; C. H. Goodwin, 9 B. T. A. 1209. The bookkeeping entries, of course, are merely evidentiary as probably reflecting a determination by the petitioner that the lease was then worthless. However, after a careful consideration of the record, we think the entry should be disregarded for the reason that the conclusion of the secretary-field manager is not supported by the facts. It is true that the outlook was not very favorable; times were exceedingly hard in the oil business, and the petitioner had not succeeded in interesting someone in the development of the lease. On the other hand, an offset well closely adjacent to the property had been successfully completed and was producing. The lessor was anxious to cooperate. In our opinion lease No. 119 may not at that time have been worth the amount of the cost to the petitioner, but it certainly was not entirely worthless at the end of 1922, and this being so, the loss was not yet definitely “sustained.” A loss is only allowable when sustained. Section 234 (a) (4) of the Revenue Act of 1921, and section 206 (e) of the Revenue Act of 1926.
We conclude that the net loss for 1923 which has been allowed as a deduction in the taxable year by the respondent should be increased in the amount of $40,032, the loss attributable to lease No. 119.

Judgment will be entered pursuant to Bule 50.